```
DA1CCHUNC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        13 Cr. 521

JOSEPH MANUEL HUNTER, TIMOTHY
VAMVAKIAS, DENNIS GOGEL,
MICHAEL FILTER and SLAWOMIR
SOBORSKI,,

                Plaintiffs.

------------------------------x

                                      New York, N.Y.
                                      October 1, 2013
                                      2:30 p.m.

Before:

                  HON. LAURA TAYLOR SWAIN,

                                     District Judge

                      APPEARANCES

PREET BHARARA,
    United States Attorney for the
    Southern District of New York
BY: MICHAEL LOCKARD
    AMY HECTOR
    ANNA SKOTKO
    Assistant United States Attorneys

EDWARD WILFORD
    Attorney for Defendant Gogel

BOBBI STERNHEIM
    Attorney for Defendant Vamvakias

MARLON KIRTON
    Attorney for Defendant Hunter

1          (Case called)
2          (In open court)
3          THE COURT:  Good afternoon.  Would everyone other than
4     the attorneys please be seated.
5          THE CLERK:  This case is United States of America
6     versus Hunter, et al.
7          THE COURT:  Counsel.
8          MR. LOCKARD:  Good afternoon, your Honor.  Michael
9     Lockard, Amy Hector and Anna Skotko for the government.
10         MS. HECTOR:  Good afternoon.
11         THE COURT:  Good afternoon, Mr. Lockard, Ms. Hector,
12    and Ms. Scotko.
13         MR. WILFORD:  Good afternoon, your Honor.  Edward
14    Wilford, and Alexandra Tseitlin, with permission, as part of
15    the mentoring program for Mr. Gogel, who is seated in the seat
16    furthest away from your Honor in the first row.
17         THE COURT:  Good afternoon, Mr. Gogel.  Good
18    afternoon, Mr. Wilford and Ms. Tseitlin.
19         MS. STERNHEIM:  Good afternoon, your Honor.  Bobbi C.
20    Sternheim for Timothy Vamvakias, who is in the second row.
21         THE COURT:  Good afternoon, Mr. Vamvakias.  Good
22    afternoon, Ms. Sternheim.
23         MS. STERNHEIM:  Thank you.
24         MR. KIRTON: For Joseph Hunter, Marlon Kirton.
25         THE COURT:  Good afternoon, Mr. Kirton.

1           MR. KIRTON:  Mr. Hunter is seated in the first seat,
2    first row.
3           THE COURT:  And, Ms. Shroff, is the federal defenders
4    conflicted in there for --
5           MS. SHROFF:  We are, your Honor.  I represented
6    Mr. Hunter on Saturday.  I'm informed my office has a conflict.
7    I ask the Court to relieve me as his counsel.  I wish
8    Mr. Hunter good luck.
9           THE COURT:  You wish Mr. Hunter --
10          MS. SHROFF:  Good luck.
11          THE COURT:  Oh, thank you.
12          And so, we will enter an order substituting CJA
13   representation by Mr. Kirton for representation by the federal
14   defenders.
15          MS. SHROFF:  Thank you, your Honor.  May I be
16   relieved?
17          THE COURT: Yes, you may.
18          MS. SHROFF:  Thank you, your Honor.
19          THE COURT:  Thank you, Ms. Shroff.
20   Ms. Czagany, are you interpreting from German to English and
21   vice versa?
22   Would you mind taking the interpretation oath.
23          (Interpreter sworn)
24          THE COURT:  Thank you.
25          Mr. Gogel, if you, at any time, have any difficulty

1  understanding the interpretation, raise your hand so that we
2  can attend to it.
3  Are you understanding everything clearly so far?
4          DEFENDANT GOGEL:  Yes, your Honor.
5          THE COURT:  Thank you.
6          Mr. Lockard, I understand that this afternoon we
7  principally need to address arraignment of two of the
8  defendants, Mr. Vamvakias and Mr. Gogel, on the S7 indictment,
9  and also conduct an initial conference; is that correct?
10         MR. LOCKARD:  That's correct, your Honor.
11         THE COURT:  Thank you.  So let's attend to the
12 arraignment.  Ms. Sternheim?
13         MS. STERNHEIM:  Yes.
14         THE COURT:  For Mr. Vamvakias. Ms. Sternheim, have you
15 read the S7 indictment?
16         MS. STERNHEIM:  Yes, I have.  I have discussed it with
17 my client and provided him with a copy.  He waives the formal
18 reading and has entered a plea of not guilty.
19         THE COURT:  Thank you.  And, as you know, it is my
20 practice also to address your client directly.
21         MS. STERNHEIM:  I know that, your Honor.
22         THE COURT:  So I will do that now.  Mr. Vamvakias, you
23 can stay seated as I ask you these questions.
24         DEFENDANT VAMVAKIAS:  Yes, your Honor.
25         THE COURT:  Would you please state your full name.

1    DEFENDANT VAMVAKIAS:  Timothy Scott Vamvakias.
2    THE COURT:  And, how old are you, sir?
3    DEFENDANT VAMVAKIAS:  42.
4    THE COURT:  Have you read the indictment, that is, the
5 document with the number S7 13 Criminal 521 at the top that
6 contains the charges against you?
7    DEFENDANT VAMVIKIAS:  Yes, your Honor, I have.
8    THE COURT:  Have you discussed it with your attorney?
9    DEFENDANT VIMVAKIAS:  Yes, your Honor, I have.
10   THE COURT:  Do you understand the charges against you?
11   DEFENDANT VIMVAKIAS:  Yes, I do.
12   THE COURT:  If you want me to, I'll read the
13 indictment out loud to you here in court.  Do you want me to
14 read the indictment out loud to you?
15   DEFENDANT VIMVAKIAS:  Not necessary now, your Honor.
16   THE COURT:  And how do you plead to each of the
17 charges against you in the indictment?  Not guilty or guilty?
18   DEFENDANT VIMVAKIAS:  I plead not guilty, your Honor.
19   THE COURT:  Sorry, say that again.
20   DEFENDANT VIMVAKIAS:  I plead not guilty, your Honor.
21   THE COURT:  Thank you.  It's just important that we
22 not speak at the same time so that the court reporter can get
23 it down.
24   MS. STERNHEIM:  Thank you.
25   THE COURT:  Mr. Wilford.

1                MR. WILFORD:  Yes, your Honor.
2                THE COURT:  For Mr. Gogel.
3     Have you seen a copy of the S7 superseding indictment?
4                MR. WILFORD:  Yes, I have, your Honor.  I've reviewed
5     it with Mr. Gogel.  We waive a public reading, and he is
6     prepared to enter a plea of not guilty, and I understand the
7     Court is going to be making an inquiry of Mr. Gogel, as well.
8                THE COURT:  Mr. Gogel, would you please state your
9     full name.
10               DEFENDANT GOGEL:  Dennis Gogel, your Honor.
11               THE COURT:  How old are you, sir?
12               DEFENDANT GOGEL:  I am 27, your Honor.
13               THE COURT:  Has the indictment been read to you in
14    German?
15               DEFENDANT GOGEL:  Yes, your Honor.
16               THE COURT:  Have you discussed it with your attorney?
17               DEFENDANT GOGEL:  Yes, your Honor.
18               THE COURT:  Do you understand the charges against you
19    that are in this indictment?
20               DEFENDANT GOGEL:  Yes, your Honor.
21               THE COURT:  How do you now plead to each of the
22    charges against you?  Not guilty or guilty?
23               DEFENDANT GOGEL:  I plead not guilty, your Honor.
24               THE COURT:  And I should have asked you this before,
25    but if you want, I'll read the indictment out loud to you.  Do

1  you want me to read it out loud to you?
2       DEFENDANT GOGEL:  Not necessary, your Honor.
3       THE COURT:  Thank you.
4       DEFENDANT GOGEL:  Thank you.
5       THE COURT:  Mr. Lockard, have you discussed discovery
6  and a proposed schedule for the next phase of this case with
7  defense counsel?
8       MR. LOCKARD:  We've had a preliminary discussion about
9  the nature of the discovery that we will be producing.  We
10 haven't discussed the details of a schedule for upcoming
11 proceedings.  I'm happy to describe for the Court the nature of
12 discovery that we have and that we anticipate producing, and
13 that we expect to come in over a period of time from today to
14 in the future.
15      THE COURT:  I'd be grateful if you did that, and also,
16 if you would just project a little bit more because I'm not
17 sure if the people in the back can hear you.
18      MR. LOCKARD:  Yes, your Honor.
19      THE COURT:  Thank you.
20      MR. LOCKARD:  So the discovery of this case will
21 consist of, among other things, audio and video recordings,
22 electronic communications.  We anticipate producing, subject to
23 a transcript stipulation, summaries of those audio and video
24 recordings where we have them. The recordings --
25      THE COURT:  Are they in the English language or are

1  there translations?

2  MR. LOCKARD: They are principally in the English
3  language.
4  We also have, pursuant to search warrants, additional
5  electronic communications. And we're in the process of
6  gathering written versions of any statements that the
7  defendants may have made upon their arrest and during their
8  transportation from the country of their arrest to the United
9  States.

10  THE COURT: To your knowledge, are there such
11  statements?

12  MR. LOCKARD: I believe there some statements. I
13  think they're relatively limited, but we're getting written
14  versions of those so that we can produce them to the defense
15  counsel for each defendant's statements.

16  THE COURT: And what is the status of the other two
17  defendants?

18  MR. LOCKARD: The additional two defendants,
19  Mr. Soborski and Mr. Filter, were arrested in Estonia, and are
20  currently in the custody of Estonian law enforcement, and we
21  are in the process of seeking their extradition. At this
22  point, we don't have an estimate on when they may arrive in the
23  United States.

24  THE COURT: And over what period of time do you expect
25  to be making the discovery?

1          MR. LOCKARD:  We can make a production of a
2     substantial, if not nearly, all of the discovery, within
3     approximately the next two to three weeks.  That's caveated by
4     the fact that, in connection with the arrests of the defendants
5     in foreign countries, there was additional evidence that was
6     gathered by foreign law enforcement, and so, our ability to
7     produce that material depends on when it is that we get it, and
8     when it is that we're able to search or otherwise make it
9     available.
10         THE COURT:  And will you be making discovery on a
11    rolling basis over this two to three week period, or do you
12    expect to do it all at once?
13         MR. LOCKARD:  We will make a rolling production of
14    discovery, starting with what we have as immediately available.
15    A substantial chunk of it will be, I think, at once, because
16    it's going to fit comfortably on a hard drive, and so, if
17    defense counsel can provide the government with a hard drive,
18    we can produce the bulk of recordings at once on that hard
19    drive.
20         THE COURT:  And what arrangements do you plan to make
21    for access of the defendants to the electronic discovery at the
22    detention facilities?
23         MR. LOCKARD:  So two issues:  One is we anticipate
24    submitting to the Court a protective order with respect to the
25    discovery that does involve confidential sources.  And then

secondly, we will discuss with the warden and the prison librarian at the MCC, where each of the three defendants is currently detained, procedures for making that material available to the defendants, I anticipate, through the library.

THE COURT: Thank you. And I understand that the S7 indictment was unsealed. Are there any other unsealing applications that you anticipate at this time?

MR. LOCKARD: I don't think so; although, based on our discussions with the clerk's office, we may submit to the Court a short written order to clarify the status of the magistrate clerks for their comfort, and the date and time on which the indictment was unsealed.

THE COURT: And so, have you discussed with defense counsel an appropriate interval to the next conference?

MR. LOCKARD: We haven't. If you'd like, we can take 30 seconds to a minute now and discuss that with counsel and come back on the record.

THE COURT: That will be fine. Then, I'll hear anything else that defense counsel wishes to discuss.

MR. LOCKARD: Yes, your Honor.

(Pause)

THE COURT: Mr. Lockard?

MR. LOCKARD: Yes, your Honor. I think each of the three defense counsel will be comfortable with a 90-day window for our next conference so that we can get the discovery out to

them, and they can begin process of reviewing a voluminous amount of recordings and other discovery themselves and with their clients.

THE COURT: Ms. Ng, may we have a date in the three-month time frame, please.

THE DEPUTY CLERK: Friday, December 20, 2013.

MS. STERNHEIM: Your Honor, I will be out of town during that week. I would ask for a date in the middle of January, if possible. I think it's going to take a significant and long period of time for counsel to review this, let alone our clients. Right now, my client, and I know Mr. Gogel, is in the SHU. Being able to review electronic material while they're there is a tremendous hurdle. There's limited facilities and limited working technology. I imagine, even with the amount of time that the Court will allow us, we may even have to report that additional time is needed. So if the Court is comfortable with that, I would ask for the middle of January.

THE COURT: Does either of the other defense counsel have a problem with the middle of January?

MR. WILFORD: No, your Honor.

MR. LOCKARD: No, your Honor.

THE COURT: Thank you. Let's have a date in January.

THE CLERK: Friday, January 17, 2014, at 12 o'clock.

MS. STERNHEIM: Thank you very much.

1    MR. WILFORD:  I'm sorry, 12 o'clock?
2    THE CLERK:  Yes.
3    THE COURT:  Is everyone available on January 17, 2014,
4    at noon?
5    MR. WILFORD:  Yes, your Honor.
6    MR. KIRTON:  Yes, your Honor.
7    THE COURT:  And Mr. Lockard, that works for the
8    government, as well?
9    MR. LOCKARD:  It does, your Honor.
10   THE COURT:  Thank you.  The next conference is set for
11   January 17, 2014, at noon.
12   Is there a request for exclusion from a speedy trial
13   computation for the period from now until January 17th?
14   MR. LOCKARD:  Your Honor, we request the exclusion of
15   time from the Speedy Trial Act so that the defendants and their
16   counsel can review the discovery and discuss the case with
17   their respective counsel.
18   THE COURT:  Clients?
19   MR. LOCKARD:  Yes.
20   THE COURT:  Any objection?
21   MR. WILFORD:  No, your Honor.
22   MR. KIRTON:  No, your Honor.
23   THE COURT:  The request is granted.  I find, for the
24   reasons summarized by Mr. Lockard, that the ends of justice
25   served by the granting of an exclusion from speedy trial

1   computation for the period from today's date through
2   January 17, 2014, outweigh the best interest of the public and
3   each of the defendants in a speedy trial.  Accordingly, the
4   time period is excluded prospectively.
5   Mr. Lockard, just to confirm, am I correct in understanding
6   that Mr. Hunter has already been arraigned on the 17th?
7           MR. LOCKARD:  That is correct, your Honor.  Mr. Hunter
8   was both presented and arraigned in magistrate's court on
9   Saturday, which I believe was September 28th.
10          THE COURT:  Thank you.
11  Mr. Wilford?
12          MR. WILFORD:  Yes.  Your Honor, let me start with the
13  Government's recitation of the discovery materials.  I believe
14  the Government mentioned that there were search warrants, and
15  that there were also some seizures of materials in foreign
16  nations where the materials were seized.  With respect to those
17  seizures, were there warrants issued by those particular
18  foreign nations, or were there warrants only issued by the
19  government of the United States?
20          THE COURT:  Mr. Lockard, do you have a response to
21  that?
22          MR. LOCKARD:  I have a partial response.  The broader
23  response is that we're in the process of gathering the
24  information about exactly what evidence may have been taken
25  into custody, where, and under what circumstances.  These

1  arrests occurred on September 25th, in various locations.  I
2  know that some evidence was gathered pursuant to a consensual
3  search, and as we identify what's been gathered overseas, and
4  as we're able to take it into U.S. custody, we'll be able to
5  provide an inventory and access to that evidence to the
6  defendants.
7    THE COURT:  So you're not taking the position that
8  anything of that nature, the nature of warrant applications
9  where search warrants would be withheld, in essence, by the
10  government.
11    THE LOCKARD:  No, your Honor.
12    THE COURT:  Your anticipation is that it will be
13  produced as it is gathered?
14    MR. LOCKARD:  That's correct.  And to the extent that
15  additional warrants are required from this Court, it will be
16  taken care of.
17    THE COURT:  Thank you.
18    MR. WILFORD:  The next point, your Honor, that I had
19  was -- and we've discussed this with the government, Ms.
20  Sternheim and myself, with respect to our clients being
21  confined in the SHU, and we're trying to go work that out with
22  the government.  If we have any stumbling blocks that are
23  insurmountable, we will contact the Court for intervention, if
24  necessary.
25    THE COURT:  Thank you.

1          MR. WILFORD:  The third thing that I wanted to request

2     from the Court is that on behalf of Mr. Gogel, I would like to

3     do a bail application.  My schedule is such, however, that I

4     will not be able to do a detention hearing until late

5     October/early November, which would also give me a chance to

6     contact Mr. Gogel's family, and find out more about his ability

7     and his financials and his family's financials to present a

8     cogent bail application to the Court.  So, I don't know if the

9     Court wanted to entertain it or the magistrate on duty, but

10    either way, I just wanted to alert the Court.

11         THE COURT:  I think, given my trial schedule, that the

12    most flexible way to do it would be to take it to the on-duty

13    magistrate judge in the first instance, since I'll be on trial

14    at least four days a week.

15         MR. WILFORD:  Thank you.  So I'll coordinate that with

16    the government, your Honor.  Thank you.

17         THE COURT:  Thank you.  Ms. Sternheim?

18         MS. STERNHEIM:  Yes, your Honor.  This is a matter

19    that I did discuss with the government, but I may need Court

20    assistance.  Mr. Vamvakias has diabetes, and his blood sugar

21    gets low in the evening, and he has requested the facility to

22    have some fruit or other items that contain glucose.  That has

23    been denied.  Fortunately, I met with him last evening, so I

24    was able to provide him with something that helped him through

25    the evening.  But unless he receives something, he may go into

1     a state that would be detrimental to his health.
2              THE COURT:  Have you, or has the government, to your
3     knowledge, discussed this issue with the legal department of
4     the facility?
5              MS. STERNHEIM:  No.  We're going to do that, and I
6     hope that we can resolve it, but I wanted the Court to be aware
7     of it in case I need to ask for the Court's intervention.
8              THE COURT:  Yes.  Thank you for the heads up.
9              MS. STERNHEIM:  Thank you.
10             MR. KIRTON:  I just have one issue for the Court's
11    attention.  I'd like the Court to mark my client's file for
12    medical attention.  I'm concerned about the fact -- well, he's
13    obviously a former member of the United States Army.  He served
14    overseas.  I'm  concerned about his mental and emotional health
15    while he's being incarcerated in this particular case.  So I'd
16    like to have the Court mark his BOP file for medical attention
17    because I'm concerned about his medical and emotional health.
18             THE COURT:  What I'd ask is that in the first instance
19    -- and I'd ask this of the U.S. attorney's office -- that a
20    specific request be made through the counsel's office for a
21    physical and mental health evaluation promptly.
22             MR. KIRTON:  Yes.
23             THE COURT:  And by that, I mean this week, and to the
24    extent the BOP will not or cannot make that commitment, I would
25    entertain a request for an order to that effect.

1     a state that would be detrimental to his health.
2              THE COURT:  Have you, or has the government, to your
3     knowledge, discussed this issue with the legal department of
4     the facility?
5              MS. STERNHEIM:  No.  We're going to do that, and I
6     hope that we can resolve it, but I wanted the Court to be aware
7     of it in case I need to ask for the Court's intervention.
8              THE COURT:  Yes.  Thank you for the heads up.
9              MS. STERNHEIM:  Thank you.
10             MR. KIRTON:  I just have one issue for the Court's
11    attention.  I'd like the Court to mark my client's file for
12    medical attention.  I'm concerned about the fact -- well, he's
13    obviously a former member of the United States Army.  He served
14    overseas.  I'm  concerned about his mental and emotional health
15    while he's being incarcerated in this particular case.  So I'd
16    like to have the Court mark his BOP file for medical attention
17    because I'm concerned about his medical and emotional health.
18             THE COURT:  What I'd ask is that in the first instance
19    -- and I'd ask this of the U.S. attorney's office -- that a
20    specific request be made through the counsel's office for a
21    physical and mental health evaluation promptly.
22             MR. KIRTON:  Yes.
23             THE COURT:  And by that, I mean this week, and to the
24    extent the BOP will not or cannot make that commitment, I would
25    entertain a request for an order to that effect.

```
1              MR. KIRTON:  Thank you.
2              MR. LOCKARD:  Your Honor, we'll contact counsel's
3    office and take care of the issues with that.
4              THE COURT:  Thank you.  I appreciate that.  Is there
5    anything else that we need to take up together this afternoon?
6              MR. WILFORD:  Not with Mr. Gogel at this point, your
7    Honor.
8              MS. STERNHEIM:  No, thank you.
9              MR. KIRTON:  No, your Honor.
10             MR. LOCKARD:  Nothing from the Government.
11             THE COURT:  Thank you.  We are adjourned.  Good day.
12   I look forward to seeing you all in January.
13             MR. WILFORD:  Thank you, your Honor.
14             (Adjourned to January 17, 2014 at 12:00 p.m.)
```