UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

  -v-                                                                  No.  13-CR-521-LTS-4

DENNIS GOGEL,

      Defendant.

--------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Before the Court is Defendant Dennis Gogel's motion, pursuant to 18 U.S.C.

section 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), for a reduction of his sentence of 240 months

of imprisonment to time served.  (Docket entry no. 963 ("Gogel Mem.").)

On January 13, 2015, Mr. Gogel pleaded guilty to charges of conspiring to import

cocaine into the United States, conspiring to murder a law enforcement agent and a person

assisting a law enforcement agent, conspiring to possess a firearm in furtherance of a crime of

violence, and conspiring to distribute and possess with intent to distribute five kilograms or more

of cocaine aboard a U.S.-registered aircraft.  (Docket entry no. 205.)  On September 24, 2015,

the Court sentenced Mr. Gogel principally to 240 months of imprisonment, which he is currently

serving at the Federal Correctional Institution, Miami ("FCI Miami"), followed by five years of

supervised release.  (<u>Id.</u>; Gogel Mem. at 13.)  His currently projected release date is June 19,

2031.  (Docket entry no. 969-2, at 2.)  He previously moved <u>pro se</u> for a reduction in sentence

under Section 3582(c)(1)(A) on September 30, 2021, which motion the Court denied.  (Docket

entry no. 790.)  Mr. Gogel initiated a second <u>pro se</u> motion for compassionate release (docket

entry no. 864), which was terminated without prejudice after the Court appointed counsel to

assist Mr. Gogel (docket entry no. 919).

Now counseled, Mr. Gogel again seeks a reduction of his sentence to time served. He points to harsh prison conditions during the COVID pandemic and thereafter, recently developed health issues, the denial of his application to the Office of Enforcement Operations for transfer to serve his sentence in his home country of Germany, positive rehabilitative adjustments, and a perceived disparity in sentences between him and his co-defendants as circumstances warranting relief. (See Gogel Mem. at 10-25.) In opposition, the Government first argues that Mr. Gogel has not exhausted administrative remedies. (Docket entry no. 969 ("Gov't Mem.") at 16-18.) The Government also claims that Mr. Gogel has not shown extraordinary and compelling reasons for a reduction of his sentence, as Section 3582(c)(1)(A) requires, nor that the applicable factors set forth in 18 U.S.C. section 3553(a) ("Section 3553(a)") favor a reduction in sentence. (Id. at 18-24.)

The Court has reviewed carefully the parties' submissions and, for the following reasons, grants Mr. Gogel's motion to the extent that the length of his custodial sentence will be reduced by 30 months.

## I.    DISCUSSION

A district court may exercise its discretion to reduce a defendant's term of imprisonment under Section 3582(c)(1)(A) if (1) the defendant has exhausted his administrative remedies, (2) the applicable Section 3553(a) factors favor reducing his sentence, and (3) the defendant's circumstances are extraordinary and compelling "such that, in light of these § 3553(a) factors, a sentence reduction is justified . . . and would not simply constitute second-guessing of the sentence previously imposed." United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam). "The defendant has the burden to show he is entitled to a sentence reduction." United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

A.       Exhaustion

The Court first considers whether Mr. Gogel has exhausted his administrative remedies.  See United States v. Williams-Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies.").  To satisfy this exhaustion requirement, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf" or wait until "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 119-80).  The Government contends that Mr. Gogel failed to satisfy this requirement, proffering that "[t]he BOP legal department and the FCI Miami staff reported that they had no record of Gogel submitting a request for compassionate release or a sentence reduction."  (Gov't Mem. at 17; see docket entry no. 969-3.)  In reply, Mr. Gogel has submitted copies of his time-stamped emails transmitting his application sent on May 7, 2024, to a recipient entitled "Warden."  (See docket entry nos. 979-1 to -2.)

Mr. Gogel's factual showing is sufficient to demonstrate satisfaction of the exhaustion requirement.  (See docket entry no. 979 ("Reply Mem.") at 1 (asserting that Mr. Gogel's request "was submitted via email on the BOP's prison email system" (emphasis omitted)).)  The Government's correspondence with BOP administrators, taken at face value, establishes that they were unable to locate anything from Mr. Gogel that they had recognized and treated as a request for compassionate release.  The Government did not seek to respond to Mr. Gogel's proffer of the email message, whether to deny its continued existence in the BOP's system; address whether addressing the email message to "Warden" would, as the document suggests on its face, be a way of directing a message or request to the warden of the facility; or

represent that there was a more formal system, accessible by Mr. Gogel, of directing a compassionate release request to the warden of the facility.  On this record and under these circumstances, the Court finds the Government's proffer insufficient to negate compliance with the statutory exhaustion requirement, and finds that Mr. Gogel has carried his burden of demonstrating that he did direct a timely request to the warden of FCI Miami.  Courts in this Circuit have found proffers similar to that of the Government here insufficient to defeat a defendant's showing that he did, in fact, make such a request to the warden, as Section 3582(c)(1)(A) requires.  See, e.g., United States v. Rubano, No. 17-cr-169-JGK, 2023 WL 6796384, at *2 (S.D.N.Y. Oct. 3, 2023) (holding, despite BOP's report "that it had no records of the defendant's request," that "the defendant has presented sufficient evidence that the letter was sent . . . and the Government has not provided evidence to the contrary" and that "therefore, the defendant has exhausted his administrative remedies"); United States v. Hernandez, No. 14-cr-264-JS, 2026 WL 111639, at *4 (E.D.N.Y. Jan. 14, 2026) (finding Government's lack of exhaustion defense insufficient in spite of prison official's inability "to find any such request").  Absent evidence that Mr. Gogel's proffered email correspondence does not document "receipt of such a request by the warden of the defendant's facility," 18 U.S.C. § 3582(c)(1)(A), through the internal email system, the Court deems Mr. Gogel's application exhausted and will proceed to the merits.

B.      Section 3553(a) Factors

        The Court now considers whether the applicable Section 3553(a) factors warrant relief.  "In the compassionate release context — just as at the time of sentencing — '[t]he weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge.'"  United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025) (alteration in

original) (quoting Keitt, 21 F.4th at 72).  The Section 3553(a) factors pertinent to this particular

inquiry include, but are not limited to, "the nature and circumstances of the offense and the

history and characteristics of the defendant"; the need for the sentence imposed "to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense"; the needs "to afford adequate deterrence to criminal conduct," "to protect the public

from further crimes of the defendant," and "to provide the defendant with needed . . . medical

care, or other correctional treatment in the most effective manner"; and "the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct."  18 U.S.C. § 3553(a)(1)-(2), (6).

The Court previously reviewed Mr. Gogel's case in light of the applicable Section

3553(a) factors during Mr. Gogel's sentencing.  (See docket entry no. 308 ("Sent. Tr.") at 34-

37.)  The Court noted that "Mr. Gogel had committed 'a very serious set of offenses' involving

'the planned importation of illegal narcotics into the United States as well as a sophisticated

intentional conspiracy to kill both an active law enforcement officer and an individual assisting

law enforcement.'"  (Id. at 34.)  The factors and relevant facts were also considered in the

determination of his first compassionate release motion.  See United States v. Gogel, No. 13-cr-

521-LTS-4, 2021 WL 5827638, at *1-5 (S.D.N.Y. Dec. 8, 2021).  Regarding Mr. Gogel's

personal history and characteristics, the Court recognized, and continues to recognize, that Mr.

Gogel has been in custody away from his home country of Germany, where he grew up and

enlisted in the military.  See id. at *3.  Mr. Gogel's grandmother raised him, and he was

concerned that she might pass away while Mr. Gogel was serving his sentence.  (Sent. Tr. at 20;

Gogel Mem. at 17.)[1]  When fashioning Mr. Gogel's sentence, the Court weighed these considerations, as well as "(1) 'a significant need' for just punishment, given Mr. Gogel's willingness to use his specialized skills for criminal ends; (2) a 'significant need' for deterrence in order to 'deter other former military service members from going down the same path'; and (3) a significant need for protection of the public, given the dangerous nature of the offense." Gogel, 2021 WL 5827638, at *3 (quoting Sent. Tr. at 36).  The Court imposed a lengthy, albeit below-Guidelines, sentence of 240 months of imprisonment, followed by five years of supervised release, representing "a slight downward variance from the advisory sentencing guideline range of 262 to 327 months of imprisonment." Id.  In 2021, the Court denied Mr. Gogel's first motion for compassionate release based on, among other things, the seriousness of Mr. Gogel's crimes as well as his disciplinary history while imprisoned.  See id. at *1-5.

Mr. Gogel now asks the Court to reassess the application of Section 3553(a) in light of adverse developments since the Court imposed his custodial sentence, some of which also postdate his initial compassionate release motion.  (See Gogel Mem. at 10, 17-18.)  While imprisoned, Mr. Gogel underwent more than two years of frequent lockdowns in the wake of the COVID-19 pandemic and he continues to endure unremediated mold contamination and leaks in his prison cell.  (Id. at 13.)  In addition, Mr. Gogel has been beset by a variety of health issues while imprisoned, beginning with untreated anabolic steroid withdrawal, resulting in a dangerous hormonal imbalance and hospitalization.  (Id. at 14-15.)  As a result of this hormonal imbalance, Mr. Gogel attests, he has suffered debilitating and humiliating symptoms, including fatigue,

---

[1]  Mr. Gogel's grandmother passed away in 2021, but his current compassionate release application includes supporting materials and a release plan that indicate that Mr. Gogel has multiple living relatives in Germany who are committed to act as a support network for his re-entry.  (See Gogel Mem. at 24-25; docket entry nos. 963-6 to -9.)

depression, insomnia, and physical manifestations of hormonal abnormalities.  (Id. at 15.)  He developed Hashimoto's disease, a malady that is uncommon in men, and experiences symptoms of mood disorders, cramping, migraines, anxiety, insomnia, and vertigo.  (Id. at 16.)  Mr. Gogel also reports a variety of physical injuries, including herniated discs in his lumbar and thoracic regions, as well as a torn bicep.  (Id. at 16 & n.18.)  Although prison officials initially prescribed over-the-counter pain medication for him, Mr. Gogel alleges that these prescriptions have not been continued, forcing him to purchase less effective medication through the facility's commissary.  (Id.)

The Court agrees that these recent developments merit reevaluation of his remaining custodial sentence under the Section 3553(a) factors.  Although the serious nature of Mr. Gogel's offense has not changed, his personal history and characteristics now include the unfortunate medical issues that have arisen throughout his term of incarceration.  As Mr. Gogel submits, "[t]hese conditions were not foreseeable at the time of his sentence."  (Id. at 17.)  The Court also notes that need for incapacitation to protect the public against further crime by Mr. Gogel has diminished.  Mr. Gogel asserts, and the Government does not contest, that "the BOP has designated him as a low risk for violence and recidivism" due to positive developments during his time in custody.  (Gogel Mem. at 20; see docket entry no. 963-5, at 4.)  For instance, Mr. Gogel has assisted fellow inmates with legal research and learning German, and letters from inmates who have worked and spoken with him attest to multiple positive interactions.  (See Gogel Mem. at 19-20; docket entry no. 963-2, at 2-9.)  Although the Government cites Mr. Gogel's disciplinary history as evidence of a lack of rehabilitation (Gov't Mem. at 21-22), Mr. Gogel accurately notes that his most recent infractions — involving cell phone use to videochat with a newborn niece — are low-level and nonviolent.  (Reply Mem. at 5-6).  The cellphone

incident, although serious because unauthorized cellphone use in a prison presents many potential risks to the facility and those within it, suggests family-oriented, positive intentions. Mr. Gogel also provides a detailed reentry plan for his return to Germany, supported by various family members, that includes residing with his cousin and registering with a German employment agency and prisoner reintegration programs. (Gogel Mem. at 24-25; see generally docket entry nos. 963-6 to -9.) Contrary to the Government's suggestion (Gov't Mem. at 20), this reentry plan did not receive attention in the Court's previous consideration, as it is now presented in much more detail and support than it was in Mr. Gogel's first, pro se motion for compassionate release (see docket entry no. 775, at 5 (stating only that "Mr. Gogel plans to live with his grandmother if released")). The Court also notes that Mr. Gogel is subject to an immigration detainer, further demonstrating that he is not likely to remain in the United States after release from federal custody. (See docket entry no. 963-5, at 4.) Both Mr. Gogel's notable rehabilitative efforts and the BOP's determination that he presents a low risk of recidivism favor a reduction in sentence.

The Government correctly recognizes that rehabilitation alone is insufficient to merit compassionate release. See United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020) ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (alterations in original) (footnote omitted) (quoting 28 U.S.C. § 994(t))); (Gov't Mem. at 22). In Mr. Gogel's case, other Section 3553(a) factors also merit a reduction of Mr. Gogel's sentence, including the BOP's insufficient provision of medical care. See 18 U.S.C. § 3553(a)(2)(D) (requiring a sentence "to provide the defendant with needed . . . medical care . . . in the most effective manner"). As Mr. Gogel details, and as the Government acknowledges, Mr. Gogel has

suffered from a variety of medical ailments while imprisoned, including "hypothyroidism,

Hashimoto's disease, opioid dependency, post-traumatic stress disorder, tooth decay, herniated

discs, lower back pain, muscle sprain, and a tendon tear in his left bicep." (Gov't Mem. at 19

(footnote omitted); see Gogel Mem. at 13-17.) As noted above, Mr. Gogel cites untreated

anabolic steroid withdrawal as a precursor to some of these conditions. (Gogel Mem. at 14-16.)

These circumstances, which were not all present at the time of sentencing,[2] also affect the

suitability of Mr. Gogel's remaining term of imprisonment, which must be sufficient, but not

greater than necessary, to comply with the purposes of sentencing as outlined in Section 3553(a).

The Government argues that Mr. Gogel receives regular treatment at FCI Miami

and notes that he reported no pain in a September 2025 preventative visit. (Gov't Mem. at 19.)

At best, the medical reports the Government submits appear to be inconsistent, with Mr. Gogel

reporting acute bicep and back pain later in 2025, as well as continuing effects of his chronic

conditions. Furthermore, even if his symptoms have not been acute at all times, the record as a

whole demonstrates that he has suffered, and continues to suffer, from multiple medical

conditions that require more effective treatment than he has been able to obtain during his

decade-plus confinement, and that have made his term of imprisonment harsher and more

punitive than the Court anticipated when originally imposing the sentence.

Mr. Gogel has thus shown that relevant Section 3553(a) factors warrant a

reduction in sentence. None of the Section 3553(a) factors currently weighs strongly against

---

[2]  Mr. Gogel's steroid use was discussed briefly during sentencing. (Sent. Tr. at 19-24, 31.)
Even so, "an extraordinary and compelling reason need not have been unforeseen at the time
of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G.
§ 1B1.13(e).

relief.  The Court will next consider whether he has demonstrated that extraordinary and compelling circumstances exist to grant relief.

C.       Extraordinary and Compelling Reasons

In 2023, the United States Sentencing Commission "provided an amended policy statement outlining a number of circumstances that could, alone or in combination, amount to 'extraordinary and compelling reasons' that warrant a reduction, including the defendant's age, medical, and family circumstances."  United States v. Jackson, No. 21-cr-537-LTS, 2024 WL 4826466, at *3 (S.D.N.Y. Nov. 19, 2024) (citing U.S.S.G. § 1B1.13(b)).  The policy statement also includes a "catch-all provision," stating that "any other circumstance or combination of circumstances . . . similar in gravity" to the reasons identified in the preceding portions of the policy statement "could also, alone or in combination with such reasons, amount to an 'extraordinary or compelling reason.'"  Id. (quoting U.S.S.G. § 1B1.13(b)(5)).  The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons.  Rather, they need be similar only in gravity."  United States v. Corbett, No. 10-cr-184-PAE, 2023 WL 8073638, at *4 (S.D.N.Y. Nov. 21, 2023) (quoting U.S.S.G. app. C, at 207 (2023)).

The Court finds that the physical and mental injuries that Mr. Gogel has suffered while incarcerated are similar in gravity to the types of medical conditions requiring "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1)(C).  As evidenced in Mr. Gogel's submissions, his condition has worsened significantly throughout his term of imprisonment. This deterioration, combined with the unusually harsh conditions of his confinement and Mr. Gogel's previously discussed rehabilitative efforts, provides extraordinary and compelling

reasons to support a reduction in sentence.  See, e.g., United States v. Martinez, No. 06-cr-987-DC, 2024 WL 4188311, at *7 (S.D.N.Y. Sept. 13, 2024) ("The conditions of [defendant's] confinement in conjunction with his illness therefore further my conclusion that extraordinary and compelling circumstances exist here."); United States v. Morales, No. 12-cr-422-9-RJS, 2023 WL 2966571, at *5 (S.D.N.Y. Apr. 17, 2023) (noting that if harsh conditions of confinement "deprive defendants of the services they need to treat 'serious mental and physical health issues,' such deprivations may support a finding of extraordinary and compelling reasons" (citation omitted)).

In sum, Mr. Gogel has shown extraordinary and compelling circumstances through his showing of untreated steroid withdrawal and the sequelae he has suffered, including humiliating physical manifestations, more than two years of COVID-related and other lockdowns, unremediated mold and deterioration in his cell, and an inability to obtain effective symptomatic relief and treatment for his medical issues, in combination with successful and determined rehabilitation efforts, a detailed reentry plan, and a documented low risk of recidivism.

D.      Sentence Reduction

Having concluded that extraordinary and compelling circumstances exist and that the Section 3553(a) factors favor a reduction in sentence, the Court determines that a 30-month reduction of Mr. Gogel's term of incarceration, rather than a designation of time served as he requests, is most appropriate.  See Brooker, 976 F.3d at 237 ("A district court could, for instance, reduce but not eliminate defendant's prison sentence . . . ."); United States v. Garcia, 505 F. Supp. 3d 328, 333 (S.D.N.Y. 2020) ("[B]ecause of the substantial health risks that [defendant]

faces . . . and the accompanying psychological toll, the Court finds that extraordinary and compelling circumstances warrant a partial reduction in [his] sentence.").

Beginning with the nature and the circumstances of the offense, Mr. Gogel was involved in "a sophisticated international criminal network, where he performed security and surveillance for a drug cartel and prepared detailed plans to assassinate a U.S. Drug Enforcement Agency ('DEA') Agent and a confidential informant." Gogel, 2021 WL 5827638, at *2. The Court noted at sentencing that "but for his arrest, Mr. Gogel would have in all likelihood have attempted to accomplish his planned murder." Id. at *3 (quoting Sent. Tr. at 36.) These serious offenses threatened the lives of those targeted and undermined our national security, rendering appropriate a definite lengthy term of custody, albeit one shorter than the term that was originally imposed. A total term of 210 months of imprisonment is sufficient, but not greater than necessary, to deter future criminal conduct as well as account for Mr. Gogel's medical difficulties and rehabilitative achievements.

Mr. Gogel raises the prospect of sentencing disparities with his co-defendants (Gogel Mem. at 20-24; Reply Mem. at 6-7), but this argument is unavailing. A sentencing court is to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That statutory provision, however, does not require consideration of sentencing disparities among co-defendants "when the co-defendants are not similarly situated." James v. United States, 603 F. Supp. 2d 472, 481 (E.D.N.Y. 2009) (citing United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008)). Mr. Gogel points to a number of co-defendants, arguing that he received a disproportionately severe sentence, but in each case, the sentences of Mr. Gogel's co-defendants reflected varying considerations regarding the nature and circumstances of the offenses at issue,

as well as the individual history and characteristics of each co-defendant.  Mr. Gogel fails to show how his original sentence, which fell below the Sentencing Guidelines' recommendation, created any unwarranted disparity from those imposed on similarly situated individuals.  See Frias, 521 F.3d at 236.  Absent such a showing, Mr. Gogel cannot demonstrate that a sentence of time served is appropriate in relation to the sentences his co-defendants received.

## II.    CONCLUSION

For the reasons set forth above, Mr. Gogel's motion for compassionate release pursuant to Section 3582(c)(1)(A) is granted, to the extent that the sentence imposed as to Counts 1, 2, 4, and 5 is reduced from 240 months of imprisonment to 210 months of imprisonment.  All other aspects of the sentence, including but not limited to the supervised release terms and conditions, remain unchanged.  Docket entry no. 963 is resolved.

SO ORDERED.

Dated: New York, New York
      March 30, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge